# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |  |
|---|---|---|
| | § | |
| JOHN DOE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:23-cv-00149-S |
| | § | |
| PUBLIC COMPANY ACCOUNTING | § | |
| OVERSIGHT BOARD, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
RULE 12(b) MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...................................................................................................................1

STATEMENT OF THE CASE...............................................................................................2

I.      The Parties ...............................................................................................................3

II.     Factual Background ................................................................................................3

III.    Doe's Claims For Relief ........................................................................................5

ARGUMENT ........................................................................................................................5

I.      Doe Fails To Plead Facts To Show That This Court Has Personal Jurisdiction Over The Board........................................................................................5

      A.     The Court Has No General Personal Jurisdiction Over The Board .......................6

      B.     The Court Has No Specific Personal Jurisdiction Over The Board.......................9

II.     The Court Should Dismiss Or Transfer This Action For Improper Venue .......................10

III.    Even If The Court Concludes That Venue Is Proper, The Court Should Transfer This Case Pursuant To Section 1404(a)...........................................................12

IV.    This Court Lacks Subject-Matter Jurisdiction Over Doe's Due Process Claim (Count V) ........................................................................................................15

V.     The Court Should Dismiss All Of Doe's Claims On Non-Jurisdictional Grounds ..........19

      A.     Doe Failed To Exhaust Administrative Remedies................................................19

      B.     Doe Lacks A Cause Of Action...............................................................................21

CONCLUSION....................................................................................................................22

## **<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**FEDERAL CASES**

*Armstrong v. Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015)......................................................................................................21

*Axon Enterprise, Inc. v. FTC*,
  986 F.3d 1173 (9th Cir. 2021) .....................................................................................19

*Bank of Louisiana v. FDIC*,
  919 F.3d 916 (5th Cir. 2019) ............................................................................16, 18, 19

*BNSF Ry. Co. v. Tyrrell*,
  581 U.S. 402 (2017)....................................................................................................6, 7

*Boyd Tech, Inc. v. Boyd Tech, Inc. (Fla.)*,
  2018 WL 3581709 (S.D. Tex. July 25, 2018)...............................................................9

*Bristol-Myers Squibb Co. v. Superior Court of California*,
  582 U.S. 255 (2017)......................................................................................................10

*Brown v. Lockheed Martin Corp.*,
  814 F.3d 619 (2d Cir. 2016)........................................................................................7, 8

*Byrd Aviation, Inc. v. Global Aerospace, Inc.*,
  2020 WL 291583 (N.D. Tex. Jan. 17, 2020) .............................................................9, 10

*Carmona v. Leo Ship Mgmt., Inc.*,
  924 F.3d 190 (5th Cir. 2019) ........................................................................................10

*Carr v. Saul*,
  141 S. Ct. 1352 (2021)...................................................................................................20

*Citadel Sec., LLC v. CBOE*,
  808 F.3d 694 (7th Cir. 2015) ........................................................................................20

*Cochran v. SEC*,
  20 F.4th 194 (5th Cir. 2021) ...........................................................................15, 16, 17, 19

*Costellow v. Becht Eng'g Co. Inc.*,
  597 F. Supp. 3d 1089 (E.D. Tex. 2022)......................................................................6, 9

*CPM Consulting LLC v. Capsugel US, LLC*,
  2019 WL 3769651 (N.D. Tex. Aug. 9, 2019) ...........................................................12, 13, 14

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)..................................................................................................6, 7, 8

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*Douglass v. Nippon Yusen Kabushiki Kaisha,*
    46 F.4th 226 (5th Cir. 2022) ................................................................................7, 8

*Elgin v. Dep't of Treasury,*
    567 U.S. 1 (2012)................................................................................15, 16, 18

*Ex parte Young,*
    209 U.S. 123 (1908)................................................................................21

*In re Farhang,*
    Exchange Act Release No. 83494, 2018 WL 3193859 (June 21, 2018) ................................17

*First Jersey Sec., Inc. v. Bergen,*
    605 F.2d 690 (3d Cir. 1979)................................................................................20

*Ford Motor Co. v. Montana Eighth Judicial District Court,*
    141 S. Ct. 1017 (2021)................................................................................10

*Frank v. P N K (Lake Charles) LLC,*
    947 F.3d 331 (5th Cir. 2020)................................................................................6

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
    561 U.S. 477 (2010)................................................................................ passim

*Galderma Labs., L.P. v. Teva Pharm. USA, Inc.,*
    290 F. Supp. 3d 599 (N.D. Tex. 2017) ................................................................................11

*Garcia Hamilton & Assocs., L.P. v. RBC Cap. Mkts. LLC,*
    466 F. Supp. 3d 692 (S.D. Tex. 2020) ................................................................................9

*Green Valley Special Util. Dist. v. City of Schertz,*
    969 F.3d 460 (5th Cir. 2020) ................................................................................21

*Guidry v. U.S. Tobacco Co., Inc.,*
    188 F.3d 619 (5th Cir. 1999) ................................................................................5

*Harris Cnty. v. MERSCORP Inc.,*
    791 F.3d 545 (5th Cir. 2015) ................................................................................21, 22

*Hee Sook Nam v. Tex Net, Inc.,*
    2021 WL 535852 (N.D. Tex. Feb. 12, 2021)................................................................................12, 14

*Int'l Shoe Co. v. Washington,*
    326 U.S. 310 (1945)................................................................................6

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*Kabani & Co. v. SEC*,
    733 F. App'x 918 (9th Cir. 2018) ............................................................17

*In re Kabani & Co.*,
    Exchange Act Release No. 80201, 2017 WL 947229 (Mar. 10, 2017) ..................17

*La Day v. City of Lumberton, Tex.*,
    2012 WL 928352 (E.D. Tex. Mar. 19, 2012) ........................................12

*Lowery v. Estelle*,
    533 F.2d 265 (5th Cir. 1976) ................................................................11

*MaxoTech Solutions LLC v. PamTen Inc.*,
    2020 WL 6489015 (N.D. Tex. Nov. 3, 2020)..........................................6

*McFadin v. Gerber*,
    587 F.3d 753 (5th Cir. 2009) ..................................................................6

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. NASD*,
    616 F.2d 1363 (5th Cir. 1980) ..............................................................20

*Mohlman v. FINRA*,
    977 F.3d 556 (6th Cir. 2020) ................................................................20

*Monkton Ins. Servs., Ltd. v. Ritter*,
    768 F.3d 429 (5th Cir. 2014) ..................................................6, 7, 10

*Naughtys LLC v. Does 1-580*,
    2022 WL 818993 (N.D. Tex. Mar. 3, 2022)............................................6

*In re Novo Nordisk Sec. Litig.*,
    530 F. Supp. 3d 495 (D.N.J. 2021) ....................................................3, 4

*Nunes v. NBCUniversal Media, LLC*,
    582 F. Supp. 3d 387 (E.D. Tex. 2022)....................................................7

*Patterson v. Aker Sols. Inc.*,
    826 F.3d 231 (5th Cir. 2016) ..................................................................7

*In re Peregoy*,
    885 F.2d 349 (6th Cir. 1989) ................................................................12

*Perkins v. Benguet Consolidated Mining Co.*,
    342 U.S. 437 (1952)............................................................................7, 8

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981) ............................................................................................................12

*Poly-America, L.P. v. API Indus., Inc.,*
    2021 WL 8441917 (E.D. Tex. Sept. 30, 2021) ........................................................9

*Pom Wonderful LLC v. FTC,*
    894 F. Supp. 2d 40 (D.D.C. 2012) ........................................................................22

*Posada v. Lamb Cnty.,*
    716 F.2d 1066 (5th Cir. 1983) ..............................................................................21

*In re Radmax, Ltd.,*
    720 F.3d 285 (5th Cir. 2013) ..........................................................................12, 15

*Radoszewski v. Plastics Indus. Ass'n,*
    2022 WL 17330464 (N.D. Tex. Nov. 29, 2022) ....................................................14

*Sambrano v. United Airlines, Inc.,*
    2021 WL 5178829 (N.D. Tex. Nov. 8, 2021) ..........................................................9

*Seminole Tribe of Fla. v. Florida,*
    517 U.S. 44 (1996) ................................................................................................21

*Seville v. Maersk Line, Ltd.,*
    53 F.4th 890 (5th Cir. 2022) ................................................................................11

*St. Paul Ins. Co. v. Trejo,*
    39 F.3d 585 (5th Cir. 1994) ..................................................................................22

*Swirsky v. NASD,*
    124 F.3d 59 (1st Cir. 1997) ..................................................................................20

*Swish Mktg., Inc. v. FTC,*
    669 F. Supp. 2d 72 (D.D.C. 2009) ........................................................................22

*Thunder Basin Coal Co. v. Reich,*
    510 U.S. 200 (1994) ........................................................................15, 16, 17, 18

*Total Gas & Power N. Am., Inc. v. FERC,*
    2016 WL 3855865 (S.D. Tex. July 15, 2016) ......................................................22

*Veba-Chemie A.G. v. M/V Getafix,*
    711 F.2d 1243 (5th Cir. 1983) ..............................................................................12

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

*In re Volkswagen AG,*
    371 F.3d 201 (5th Cir. 2004) ........................................................................12, 13

*In re Volkswagen of Am., Inc.,*
    545 F.3d 304 (5th Cir. 2008) .................................................................12, 14, 15

*Waite v. All Acquisition Corp.,*
    901 F.3d 1307 (11th Cir. 2018) .............................................................................9

*Walden v. Fiore,*
    571 U.S. 277 (2014) ............................................................................................10

**FEDERAL STATUTES**

15 U.S.C. §78s .....................................................................................................3, 18

15 U.S.C. §78u .........................................................................................................20

15 U.S.C. §78u-2 ......................................................................................................20

15 U.S.C. §78u-3 ......................................................................................................20

15 U.S.C. § 78y ....................................................................................3, 16, 17, 21

15 U.S.C. § 7202 ......................................................................................................20

15 U.S.C. § 7211 ........................................................................................................2

15 U.S.C. § 7212 ........................................................................................................2

15 U.S.C. § 7213 ........................................................................................................2

15 U.S.C. § 7215 ...............................................................................................2, 3, 18

15 U.S.C. § 7217 ......................................................................................................18

15 U.S.C. § 7517 .....................................................................................3, 16, 20, 21

28 U.S.C. § 1391 ......................................................................................................11

28 U.S.C. § 1404 .................................................................................................12, 13

28 U.S.C. § 1406 ......................................................................................................11

Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745.............................2

## TABLE OF AUTHORITIES
### (Continued)

**Page**

RULES

Fed. R. Civ. P. 12 ..................................................................................................1, 3, 22

Fed. R. Civ. P. 45 ..................................................................................................13

PCAOB Rule 5200 ..................................................................................................17

PCAOB Rule 5203 ..................................................................................................17

PCAOB Rule 5204 ..................................................................................................17

PCAOB Rule 5424 ..................................................................................................17

PCAOB Rule 5425 ..................................................................................................17

PCAOB Rule 5441 ..................................................................................................17

OTHER AUTHORITIES

United States District Courts – National Judicial Caseload Profile, U.S. Courts
(Sept. 30, 2022), https://www.uscourts.gov/file/62619/download ........................................13

## INTRODUCTION

Defendant Public Company Accounting Oversight Board ("PCAOB" or "Board") respectfully submits this motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), and (3).  Plaintiff's complaint—which raises a scattershot collection of constitutional claims in an effort to block a pending Board disciplinary proceeding against him—cannot and should not be adjudicated by this Court (or any federal court at this time).

The complaint does not come close to alleging that the Board has contacts with the State of Texas sufficient to meet the due process requirements for asserting personal jurisdiction.  This case has no meaningful connection to Texas.  As the complaint alleges, the Board is incorporated and has its principal place of business in the District of Columbia, and its proceedings occur there. Although the Board allegedly maintains two offices in Texas, the complaint does not suggest that those offices have anything to do with this suit, and Supreme Court precedent makes clear that such offices cannot give rise to personal jurisdiction.  And nothing in the complaint suggests that the conduct at issue in the underlying enforcement proceeding—Plaintiff's alleged failure to cooperate in a Board investigation—has any connection to Texas.  There is thus no possible basis for this Court's exercise of personal jurisdiction over the Board in this case.

For similar reasons, Plaintiff cannot establish that venue is proper in this Court.  And even if venue were technically proper here, discretionary factors point overwhelmingly to the U.S. District Court for the District of Columbia as the proper court to adjudicate this suit.

Plaintiff's complaint is also defective in numerous other threshold respects.  This Court lacks subject-matter jurisdiction over Plaintiff's due process challenge to the procedures under which the Board is conducting the proceeding against him.  Congress has made clear that any such challenge must first be made to the Securities and Exchange Commission ("SEC"), which has supervisory authority over the Board's exercise of enforcement authority, and then to a federal

court of appeals under the procedures that govern judicial review of SEC decisions.  In addition, the complaint should be dismissed because Plaintiff failed to exhaust administrative remedies and lacks a cause of action.

In sum, this case has no business being in this Court or (given the administrative proceedings that are the focus of the complaint) being in court at all.  This Court should therefore dismiss Plaintiff's complaint or, at a minimum, transfer the case to the U.S. District Court for the District of Columbia.

## STATEMENT OF THE CASE

On January 19, 2023, plaintiff John Doe filed a complaint in this Court (the "Complaint") seeking declaratory and injunctive relief against the Board, together with a motion for leave to litigate this action under the pseudonym "John Doe."  The Complaint claims that the Board has instituted a disciplinary proceeding against Plaintiff that violates the Constitution.

Congress established the Board in the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745, to oversee the audit of public companies that are subject to the securities laws.  15 U.S.C. § 7211(a).  Organized as a nonprofit corporation under the laws of the District of Columbia, the Board carries out its functions under the comprehensive supervision of the SEC in much the same way that self-regulatory organizations ("SROs") like the Financial Industry Regulatory Authority help regulate the securities markets with SEC oversight.  *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd*., 561 U.S. 477, 484 (2010).  Accounting firms that audit publicly traded companies must register with the Board and comply with certain auditing and ethics standards established by the Board.  15 U.S.C. §§ 7212(a), 7213(a)(1).  To ensure compliance, the Board may investigate any act or omission by a registered public accounting firm or associated person that may violate the Sarbanes-Oxley Act, the Board's rules, or the provisions of the securities laws relating to the preparation and issuance of audit reports.  15 U.S.C. § 7215(b)(1).  The Board may

2

also institute disciplinary proceedings against any accounting firm or associated person and impose sanctions for violations of those provisions.  15 U.S.C. § 7215(c).

The Board's sanctions are subject to review by the SEC under the same provisions that govern review of SRO sanctions.  15 U.S.C. § 7217(c)(2) (citing 15 U.S.C. § 78s(d)-(e)).  The SEC can cancel or modify any sanction it deems "excessive, oppressive, inadequate, or otherwise not appropriate."  15 U.S.C. § 7217(c)(3).  The SEC's order, in turn, is subject to review in the court of appeals under the Securities Exchange Act.  15 U.S.C. § 78y(a).

The Complaint contains the following allegations relevant to this Rule 12(b) motion.

## I.      The Parties

John Doe was previously employed as an auditor at a firm ("Firm") that is based in Colombia, South America, and is part of an international network of auditing firms ("Network"). Compl. ¶ 3.  The Complaint contains no allegations that Doe lived in, worked in, or even visited the United States or the State of Texas while employed at the Firm.

The Board is a District of Columbia nonprofit corporation that is "headquartered in the District of Columbia."  Compl. ¶ 4; *see also id.* ¶ 8.  It is allegedly "registered to conduct business in Texas, having offices and employees in Irving and Houston."  *Id.* ¶ 4.

## II.     Factual Background

In 2015, Doe was part of a team at the Firm that performed component audit procedures relating to a publicly traded company ("Company").  *Id.* ¶ 3.  That Company is an international entity headquartered overseas, but it allegedly has a presence in Texas.  *See id.* ¶ 7.

As a component auditor, the Firm was responsible for auditing only "one subsidiary or component" of the Company.  *In re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d 495, 498 (D.N.J. 2021) (explaining component audit procedures); *see also* Compl. ¶ 3.  The Firm's work was supervised by a principal auditor, which was responsible for deciding "whether to rely on and

incorporate the [Firm's] work into [the principal auditor's] overall report."  *Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d at 498; *see also* Compl. ¶ 3; PCAOB Auditing Standard 1205 (discussing incorporation process).  The Company's principal auditor was another member of the Network, Compl. ¶ 3, but the Complaint provides no further detail about that principal auditor.[1]  Nor does the Complaint provide any detail regarding the Firm's role in the 2015 audit or Doe's role on the Firm team.  For example, the Complaint never alleges that the Firm or Doe audited the Company's U.S.-based or Texas-based operations.

In early 2022, the Board informed Doe that he might become the subject of disciplinary proceedings alleging that Doe had "failed to cooperate with the Board's inspection and investigation" of the Firm's role in the 2015 audit of the Company.  Compl. ¶ 54.  The Board did not suggest it would initiate proceedings related to the "quality of the underlying audit work" Doe performed for the Firm.  *Id.*  Nothing in the Complaint alleges that the Board's investigation or Doe's failure to cooperate occurred in or related to Texas.

In December 2022, the Board instituted formal disciplinary proceedings against Doe.  Compl. ¶ 57.  Those proceedings are still pending and are thus confidential.  *Id.*  The Complaint alleges that the proceedings are being presided over by the PCAOB's Chief Hearing Officer, who was sworn in at the SEC in the District of Columbia.  *Id.* ¶ 31 (citing PCAOB Press Release).

Doe has not alleged any connection between the disciplinary proceedings and the State of Texas.  For instance, Doe has not alleged that the proceedings are occurring in Texas; that the proceedings are connected to the Board's or the Company's alleged presence in Texas; that the Board or its staff in any way acted against him in Texas; or that the hearing officer's actions or

---

[1] The Complaint alleges that a U.S.-based member of the Network has an office and employees in Texas, Compl. ¶ 6, but there is no allegation that the U.S.-based member in question was the principal auditor or was involved in the relevant audit at all.

original appointment have any connection with Texas.  Compl. ¶¶ 59-85.

## III.   Doe's Claims For Relief

Despite those ongoing Board disciplinary proceedings, Doe chose to launch this collateral attack on the Board.  He claims that, "as a result of the constitutional violations described in [his] Complaint," he is being "deprived of" his "fundamental right[s]."  Compl. ¶ 58.

Doe seeks declaratory and injunctive relief as to six separate claims.  He claims that (1) "the Board's taxing and funding scheme" violates Article I of the Constitution and separation of powers principles, Compl. ¶ 62; (2) the Board and its staff are violating Article II of the Constitution by "exercising core executive law enforcement power against [Doe] without meaningful direction and supervision by principal officers of the Executive Branch," Compl. ¶ 68; (3) the hearing officer overseeing his disciplinary proceedings is an inferior Officer who was "not lawfully appointed in accordance with the Appointments Clause," Compl. ¶ 73; (4) the hearing officer "enjoys multiple layers of protection from removal by the President," which allegedly violates Article II of the Constitution, Compl. ¶ 78; (5) the Board's disciplinary proceedings are procedurally unfair for "accused accountants," in violation of the Due Process Clause of the Fifth Amendment, Compl. ¶¶ 81-82; and (6) the disciplinary proceedings are "depriving [him] of any opportunity to defend himself before a jury," in violation of the Seventh Amendment, Compl. ¶ 85.

## ARGUMENT

## I.   Doe Fails To Plead Facts To Show That This Court Has Personal Jurisdiction Over The Board

Even assuming that Doe's factual allegations are true, the Complaint fails to establish that this Court has personal jurisdiction over the Board.  Accordingly, Doe's suit should be dismissed. *See Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 623 n.2 (5th Cir. 1999) ("Personal jurisdiction is an essential element of the jurisdiction of a district court, without which it is

powerless to proceed to an adjudication.").

This Court may exercise jurisdiction only if permitted by the Due Process Clause of the Fourteenth Amendment. *See Frank v. P N K (Lake Charles) LLC*, 947 F.3d 331, 336 (5th Cir. 2020); *MaxoTech Solutions LLC v. PamTen Inc.*, 2020 WL 6489015, at *2 (N.D. Tex. Nov. 3, 2020).[2] Due process requires that an out-of-state defendant has "certain minimum contacts" with Texas and that the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A defendant's "minimum contacts" must be sufficient to confer either "general" or "specific" jurisdiction. *Frank*, 947 F.3d at 336 (citation omitted). Here, the allegations in the Complaint establish neither.

## A.    The Court Has No General Personal Jurisdiction Over The Board

A court may assert general jurisdiction over an out-of-state corporation only if its "affiliations with the State are so 'continuous and systematic' as to render [the corporation] essentially at home in the forum State." *BNSF*, 581 U.S. at 413 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). The Supreme Court has made clear that in all but the rarest of cases, general jurisdiction exists only where a corporation is incorporated or where it maintains its principal place of business. *See Daimler*, 571 U.S. at 137; *Monkton Ins. Servs., Ltd.* v. *Ritter*, 768 F.3d 429, 432 (5th Cir. 2014). Indeed, it is "incredibly difficult," *Monkton*, 768 F.3d at 432, to establish the exceptional circumstances necessary to justify general jurisdiction in a forum other

---

[2] "Personal jurisdiction over a non-resident defendant in a federal question case is determined by reference to the law of the state in which the court sits, unless otherwise provided by federal law." *Naughtys LLC v. Does 1-580*, 2022 WL 818993, at *5 (N.D. Tex. Mar. 3, 2022) (citation omitted); *see Costellow v. Becht Eng'g Co. Inc.*, 597 F. Supp. 3d 1089, 1094 (E.D. Tex. 2022); *see also McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Texas's long-arm statute is coextensive with federal due process. *See Frank*, 947 F.3d at 336.

than the place of incorporation or principal place of business, *Daimler*, 571 U.S. at 137; *see Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387, 395 (E.D. Tex. 2022) ("mere contacts, no matter how systematic and continuous, are extraordinarily unlikely to add up to an exceptional case" (quoting *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016))). The Complaint does not come close to alleging facts that meet those rigorous standards.

First, the Complaint contains no allegations that Texas is the Board's "state of incorporation" or its "principal place of business." *Nunes*, 582 F. Supp. 3d at 395-96 (quoting *Daimler*, 571 U.S. at 137). Instead, the Complaint affirmatively recognizes that the Board is a District of Columbia nonprofit corporation that is "headquartered in the District of Columbia." Compl. ¶¶ 4, 8.

Second, the Complaint does not allege that this is an "exceptional case" in which the Board's operations in Texas are "so substantial and of such a nature as to render [it] at home in that State" even though it is neither incorporated nor headquartered there. *BNSF*, 581 U.S. at 413 (quoting *Daimler*, 571 U.S. at 139 n.19). Such a showing is "incredibly difficult," *Monkton*, 768 F.3d at 432, because it requires that company leadership has been established in the forum or company operations are directed from there, *see Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 242-43 (5th Cir. 2022) (en banc). Indeed, there is only "one modern case" in which "[t]he Supreme Court has found a sufficient basis for the exercise of general jurisdiction over a non-resident defendant" under that standard. *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 235 (5th Cir. 2016). In that case, *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), "war had forced the defendant corporation's owner to temporarily relocate the enterprise from the Philippines to Ohio." *BNSF*, 581 U.S. at 413. The company's president had moved to Ohio, where the company maintained an office, kept its files, and directed many of its wartime activities. *See*

*Perkins*, 342 U.S. at 447-48.  The Supreme Court allowed suit in Ohio, as it served as a "surrogate for the [company's] place of incorporation or head office."  *Daimler*, 571 U.S. at 130 n.8 (citation omitted).

The alleged contacts between the Board and Texas in this case do not even begin to approach that kind of exceptional circumstance.  The Complaint alleges only that the Board is "registered to do business in Texas" and "has physical office space and employees in Irving (and Houston)."  Compl. ¶¶ 2, 4.  And the Complaint contains no allegations that the Board's leadership is based in Texas or that the Board otherwise directs its operations from Texas.  Texas, then, is not a "surrogate" for the Board's place of incorporation or its head office—and general jurisdiction therefore does not exist in Texas.  *See Douglass*, 46 F.4th at 242-43 (although "substantial," the defendant corporation's contacts fell short of "exceptional circumstances" because the forum was "hardly 'the center of [the corporation's] activities' or a 'surrogate for [its] place of incorporation or head office'" (citation omitted)).[3]

A uniform body of precedent confirms that conclusion.  Case after case, both within this Circuit and outside of it, has concluded that the kind of contacts with a forum that are alleged here are not enough for general jurisdiction under the *Perkins* exception—even if those contacts are "substantial" ones.  *Douglass*, 46 F.4th at 242-43.  Indeed, numerous courts have found general jurisdiction lacking where a defendant's contacts with the forum State were far more substantial than the two offices, unspecified number of employees, and registration to do business that is alleged here.  *See, e.g.*, *Brown*, 814 F.3d at 622, 628 (no general jurisdiction notwithstanding company's "formal certificate to do business," "physical presence" (including leases in four

---

[3] Although the jurisdictional inquiry in *Douglass* arose under the Fifth Amendment, the court applied Fourteenth Amendment principles, noting that "the standards governing personal jurisdiction are essentially the same under the Fifth and Fourteenth Amendment."  *Id.* at 241-42.

different locations), employment of 30-70 workers, generation of $160 million in revenue, and payment of taxes in the state); *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1318 (11th Cir. 2018) (no general jurisdiction despite company's "registration to do business" in Florida since 1949, "distributor in Florida," "plant in the state," discussions to "build[] a shipping terminal there," and maintenance of "an agent to receive service of process there," because there were no allegations that the company's "leadership was based in Florida or that the company otherwise directed its operations from Florida"); *Garcia Hamilton & Assocs., L.P. v. RBC Cap. Mkts. LLC*, 466 F. Supp. 3d 692, 700-01 (S.D. Tex. 2020) (company's "significant Texas operations"—including four offices (Austin, Dallas, Houston, and San Antonio), "a division focused on wealth management in Texas, 240 employees, and a business presence in Texas (i.e., generating at least a few hundred transactions each year)"—not enough for general jurisdiction); *Poly-America, L.P. v. API Indus., Inc.*, 2021 WL 8441917, at *3 (E.D. Tex. Sept. 30, 2021) (corporation's "regist[ration] to do business in Texas," its "manufacturing facility in Texas," its employment of "seventy individuals (fifteen percent of [its] workforce)" in Texas, and its "market[ing] and distribut[ion]" in Texas not sufficient for general jurisdiction).[4]

## B.    The Court Has No Specific Personal Jurisdiction Over The Board

For a court to exercise specific jurisdiction, a plaintiff must show that (1) the defendant

---

[4] *See also, e.g., Sambrano v. United Airlines, Inc.*, 2021 WL 5178829, *4 (N.D. Tex. Nov. 8, 2021) (company "remain[ed] Texas's guest" despite its "constant and significant presence in Texas," including a hub in Houston and 16 percent of its employees working in Texas); *Costellow*, 597 F. Supp. 3d at 1095 (company's "multiple worksites in Texas," "multiple offices in Texas," "upper management leadership in Texas," and intake/review of company records in Texas were insufficient to confer general jurisdiction); *Byrd Aviation, Inc. v. Global Aerospace, Inc.*, 2020 WL 291583, *3 (N.D. Tex. Jan. 17, 2020) (company was not "'at home' in Texas" despite its registration to do business in Texas, regional office in Dallas, and employees in Dallas); *Boyd Tech, Inc. v. Boyd Tech, Inc. (Fla.)*, 2018 WL 3581709, at *4 (S.D. Tex. July 25, 2018) (company's "contacts [did] not amount to an exceptional circumstance" even though 50 percent of its workforce "resided in and performed their duties in Texas").

"purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there," (2) "the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts," and (3) "the exercise of personal jurisdiction is fair and reasonable." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (citation omitted); *see also Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1025 (2021) (specific jurisdiction exists only where "[t]he plaintiff's claims . . . 'arise out of or relate to the defendant's contacts' with the forum" (citation omitted)). "A defendant's contacts with the forum that are unrelated to the underlying controversy cannot support a finding of specific jurisdiction." *Byrd*, 2020 WL 291583, at *2 (citing *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255, 264-65 (2017)).

The Complaint makes no attempt to connect any of the Board's alleged Texas contacts to the controversy underlying this lawsuit. Not once does the Complaint mention Texas in its allegations regarding the investigation or disciplinary proceedings that serve as the basis for Doe's claims. Compl. ¶¶ 53-58. Although the Complaint attempts to connect "[t]he Network's U.S.-based member firm" and "the Company" to Texas, Compl. ¶¶ 6-7, those allegations are irrelevant because they have nothing to do with *the Board's* contacts with Texas. To give rise to specific jurisdiction, "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum state," and "the defendant-focused 'minimum contacts' inquiry" cannot be satisfied "by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citations omitted); *see Monkton*, 768 F.3d at 432. Accordingly, the Complaint falls far short of showing specific jurisdiction.

## II.    The Court Should Dismiss Or Transfer This Action For Improper Venue

Because the Court lacks personal jurisdiction over the Board, venue is improper in this District. The Court should therefore dismiss this action or transfer it to an appropriate forum. *See*

28 U.S.C. § 1406(a) (when venue is improper, a court "shall dismiss, or if it be in the interest of justice, transfer" the case).

Plaintiff alleges only that venue is proper under Section 1391(b)(1), Compl. ¶ 2, which provides for venue in "a judicial district in which any defendant resides."[5]  The Board is deemed to reside for venue purposes "in any judicial district in which [it] is subject to the court's personal jurisdiction with respect to the civil action."  28 U.S.C. § 1391(c)(2).  But as explained in Part I above, Plaintiff does not adequately allege that the Board is subject to personal jurisdiction here. Thus, there is no personal jurisdiction in Texas and no venue in Texas.

When "venue is improper, the district court should generally dismiss the case."  *Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 894 (5th Cir. 2022).  Here, dismissal is warranted because Plaintiff reasonably could have foreseen that venue is not proper in this District.  This case lacks any meaningful connection to Texas, and the Complaint is devoid of allegations supporting personal jurisdiction in this district.  *See id.* at 896 (dismissing where it was "entirely foreseeable" that the court "lacked personal jurisdiction over" the defendant).  Dismissing on venue grounds would not, of course, deprive Plaintiff of the ability to assert his claims in a proper forum.  *See Lowery v. Estelle*, 533 F.2d 265, 267 (5th Cir. 1976).

Alternatively, Section 1406(a) gives the Court discretion to transfer this case instead of dismissing if it concludes that doing so is appropriate in the interest of justice.  *See* 28 U.S.C. § 1406(a).  If the Court decides transfer is appropriate, it should transfer the case to the U.S. District Court for the District of Columbia, which can exercise personal jurisdiction over the Board and

---

[5] Although the Fifth Circuit has not addressed the issue, "most district courts within this circuit have imposed the burden of proving that venue is proper on the plaintiff once a defendant has objected to the plaintiff's chosen forum."  *Galderma Labs., L.P. v. Teva Pharm. USA, Inc.*, 290 F. Supp. 3d 599, 605 (N.D. Tex. 2017) (Lynn, C.J.) (collecting cases).  The result is the same here, however, whichever party bears the burden on the venue issue.

where venue is appropriate.  This Court's lack of personal jurisdiction over the Board does not

prevent it from transferring the case.  *See Hee Sook Nam v. Tex Net, Inc.*, 2021 WL 535852, at *6

(N.D. Tex. Feb. 12, 2021) (Scholer, J.).

### III.   Even If The Court Concludes That Venue Is Proper, The Court Should Transfer This Case Pursuant To Section 1404(a)

Even if the Court determines that venue is proper in this District, the Court should transfer

this action to the District of Columbia pursuant to 28 U.S.C. § 1404(a), which vests courts with

discretion to transfer an action "[f]or the convenience of parties and witnesses, in the interest of

justice, . . . to any other district or division where it might have been brought."

The transfer analysis is straightforward here because Texas "has no connection to the

parties, the witnesses, or the facts of this case." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 307

(5th Cir. 2008) (en banc); *see generally Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981)

(noting the "relaxed standards for transfer" under Section 1404(a)).  This action could have been

brought in the District of Columbia, where the Board resides. Compl. ¶ 4.  In addition, transferring

the action to the District of Columbia would promote "the convenience of the parties, in the interest

of justice." *Volkswagen*, 545 F.3d at 314 (quoting *Veba-Chemie A.G. v. M/V Getafix*, 711 F.2d

1243, 1247 (5th Cir. 1983)).  Assessment of the "interest of justice" involves "a number of private

and public interest factors," all of which favor transfer here.  *CPM Consulting LLC v. Capsugel

US, LLC*, 2019 WL 3769651, at *2 (N.D. Tex. Aug. 9, 2019) (Scholer, J.) (quoting *In re

Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)).  As the Fifth Circuit has made clear,

"[t]ransfer is appropriate where none of the operative facts occurred in the division [of plaintiff's

choice] and where the division had no particular local interest in the outcome of the case." *In re

Radmax, Ltd*., 720 F.3d 285, 287 n.1 (5th Cir. 2013) (quoting *La Day v. City of Lumberton, Tex.*,

2012 WL 928352, at *3 (E.D. Tex. Mar. 19, 2012)); *see Volkswagen*, 545 F.3d at 318 (same); *In

*re Peregoy*, 885 F.2d 349, 352 (6th Cir. 1989).

**Private Interest Factors:**   The private interest factors include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen*, 371 F.3d at 203.

Although Plaintiff's claims raise primarily legal challenges to the Board's structure, the private interest factors—to the extent they are relevant here—weigh in favor of transfer.  Plaintiff has not identified a single witness or source of proof in or near this District or within the reach of this Court's compulsory process under Federal Rule of Civil Procedure 45(c).  That omission is hardly surprising given that the Board is headquartered in the District of Columbia and Plaintiff has failed to allege that the disciplinary proceeding of which he complains is occurring in or has any connection to this District.  Resolution of the case will thus "be more expeditious, and less expensive," in the District of Columbia.  *See CPM Consulting*, 2019 WL 3769651, at *3 (granting motion to transfer venue pursuant to § 1404(a)).

**Public Interest Factors:**   The relevant public interest factors include "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home"; and "(3) the familiarity of the forum with the law that will govern the case." *In re Volkswagen*, 371 F.3d at 203.

Each of those factors favors transfer here.  First, the District of Columbia is far less congested than this District.  This District currently has an average of 534 pending cases per judgeship, and the median time from filing to disposition in civil cases is 56 months.  *See* United States District Courts – National Judicial Caseload Profile, at 34, U.S. Courts (Sept. 30, 2022), https://www.uscourts.gov/file/62619/download (12-Month Period Ending September 30, 2022).

The District of Columbia has an average of 413 pending cases per judgeship, and the median time from filing to disposition in that district court is only 5.6 months.  *See id.* at 2 (District of Columbia).  Transferring this action thus will help to relieve congestion in this District.  *See Radoszewski v. Plastics Indus. Ass'n*, 2022 WL 17330464, at *5-*6 (N.D. Tex. Nov. 29, 2022) (court congestion factor weighed in favor of transfer to District of Columbia).

Second, this District has absolutely no local interest in the suit, while the District of Columbia has a strong interest.  Plaintiff's Complaint challenges the actions and structure of the Board, which is headquartered and has its principal place of business in the District of Columbia, as well as an administrative proceeding that implicates Board employees in that jurisdiction. Although the Board has an office in this District, that office cannot give rise to a local interest because the Complaint does not allege that that office had anything to do with the "events that gave rise to this suit." *Volkswagen*, 545 F.3d at 318.  Thus, while this District has no interest in the suit, the District of Columbia has a weighty "interest in adjudicating this case." *Hee Sook Nam*, 2021 WL 535852, at *7 (granting motion to transfer and holding that because the plaintiff's action concerned a suit in California, "involve[d] actions that took place in California, and implicate[d] California residents, California has an interest in adjudicating this case").

Finally, the U.S. District Court for the District of Columbia is highly familiar with constitutional challenges to administrative agencies of the sort that Plaintiff brings here.  *See CPM Consulting*, 2019 WL 3769651, at *2.  That familiarity will likewise aid in resolving this case expeditiously.

In short, the private interest factors and the public interest factors all point in the same direction:  transfer to the District of Columbia.  Even if this Court were to view the private interest factors as neutral in light of the overwhelmingly legal nature of this case, the public interest factors

14

strongly favor transfer, and that is sufficient to warrant transferring this case.  The Northern District

of Texas has no connection whatsoever to this case other than Plaintiff's choice to sue here—and

in these circumstances, the Fifth Circuit has made clear that a district court abuses its discretion

by denying transfer.  *See Radmax*, 720 F.3d at 290 (granting writ of mandamus directing transfer

where all private and public factors except local interest were neutral, and local interest factor

weighed "solidly in favor of transfer"); *Volkswagen*, 545 F.3d at 307 (similar).  Accordingly, if

this Court does not dismiss the case or transfer it under Section 1406, a transfer under Section 1404

is amply warranted.

## IV.   This Court Lacks Subject-Matter Jurisdiction Over Doe's Due Process Claim (Count V)

Count V of Doe's Complaint challenges procedures the Board may apply in its pending

disciplinary proceeding against him as contrary to due process.  Congress, however, established a

detailed statutory scheme that channels such claims to the SEC and then the court of appeals.

It is well settled that Congress may "channel[ ]" certain claims through "a statutory scheme

of administrative review followed by judicial review in a federal appellate court."  *Elgin v. Dep't

of Treasury*, 567 U.S. 1, 9 (2012).  To determine whether such channeling has occurred, courts

examine whether "the 'statutory scheme' displays a 'fairly discernible' intent to limit jurisdiction"

and whether "the claims at issue 'are of the type Congress intended to be reviewed within th[e]

statutory structure.' "  *Free Enter. Fund*, 561 U.S. at 489 (quoting *Thunder Basin Coal Co. v.

Reich*, 510 U.S. 200, 207 (1994)).  In making that determination, courts consider (1) whether "a

finding of preclusion could foreclose all meaningful judicial review"; (2) whether the suit is

"wholly collateral to a statute's review provisions"; and (3) whether the claims are "outside the

agency's expertise."  *Id.* (quoting *Thunder Basin*, 510 U.S. at 212-13).

Applying that framework in *Cochran v. SEC*, 20 F.4th 194 (5th Cir. 2021) (en banc), *cert.*

*granted*, 142 S. Ct. 2707 (2022), the Fifth Circuit held that a challenge to the statutory removal restrictions on SEC administrative law judges was not the type of claim Congress intended to channel through administrative review to the court of appeals. *Id.* at 199-212. Although the SEC's challenge to that decision remains pending at the Supreme Court—and reversal would likely require dismissal of all of Doe's claims here—Count V fails regardless. This Court would lack jurisdiction over Count V even if the Supreme Court were to affirm the decision in *Cochran*.

There can be no debate that Sarbanes-Oxley reflects a "fairly discernible" intent to channel claims through a statutory review scheme. *Free Enter. Fund*, 561 U.S. at 489. The Board must notify the SEC of any sanction it imposes. 15 U.S.C. § 7217(c)(1). The respondent may seek SEC review under the same provisions that govern SRO sanctions. *Id.* § 7217(c)(2). The SEC can cancel or modify any sanction it deems "excessive, oppressive, inadequate, or otherwise not appropriate." *Id.* § 7217(c)(3). The respondent may then seek review in the court of appeals under the same Exchange Act provision that governs review of the SEC's own sanctions. *Id.* § 78y(a).

That comprehensive review scheme reflects a clear intent to channel claims. Courts have repeatedly reached that conclusion with respect to similar review schemes. *See, e.g.*, *Elgin*, 567 U.S. at 10-15 (Civil Service Reform Act); *Thunder Basin*, 510 U.S. at 207-12 (Mine Act); *cf. Bank of Louisiana v. FDIC*, 919 F.3d 916, 924 (5th Cir. 2019) (Federal Deposit Insurance Act). In *Bank of Louisiana*, the Fifth Circuit not only found a statutory review scheme to be exclusive, but also observed that the Exchange Act review provision at issue in this case was "materially the same" as the provision there. 919 F.3d at 924; *cf. Cochran*, 20 F.4th at 207 ("[a]ssuming arguendo" that Congress intended the Exchange Act to be exclusive for at least some claims).

Doe's due process claim, moreover, is "of the type Congress intended to be reviewed within th[e] statutory structure." *Free Enter. Fund*, 561 U.S. at 489 (citation omitted). Unlike the

structural constitutional challenges in *Free Enterprise Fund* and *Cochran*, Doe's due process claim focuses on the *Board's own conduct* of the disciplinary proceeding against him. Doe complains about the preponderance-of-the-evidence standard the Board applies, the liberal standards for admitting evidence, and the potential for adverse inferences. Compl. ¶49. He objects to the limits on pre-hearing discovery, access to the Board's investigative file, and pre-hearing depositions. *Id.* ¶50. He also objects to the limits on third-party subpoenas and access to prior Board decisions. *Id.* ¶¶51-52. Nearly all those restrictions are products of the Board's own rules. *See, e.g.*, PCAOB Rule 5200(c) (conduct of hearing); PCAOB Rule 5203 (confidentiality); PCAOB Rule 5204(a) (burden of proof); PCAOB Rule 5424 (subpoenas); PCAOB Rule 5425 (depositions); PCAOB Rule 5441 (admissibility of evidence).

The three *Thunder Basin* factors make it clear that Congress intended to channel objections to those rules through the statutory review scheme:

First, this is not a case in which "a finding of preclusion could foreclose all meaningful judicial review." *Free Enter. Fund*, 561 at 489 (citation omitted). The SEC regularly adjudicates due process objections to procedures in disciplinary proceedings, including Board disciplinary proceedings. *See, e.g.*, *In re Farhang*, Exchange Act Release No. 83494, 2018 WL 3193859, at *6-8 (June 21, 2018) (rejecting claim that "the PCAOB violated [accountant's] due process rights by applying various procedural rules [and] limiting his discovery"); *In re Kabani & Co.*, Exchange Act Release No. 80201, 2017 WL 947229, at *17-19 (Mar. 10, 2017) (rejecting due process claim based on Board's publication of settlement and exclusion of expert testimony), *pet. for review denied*, 733 F. App'x 918 (9th Cir. 2018). And if Doe were aggrieved by an SEC decision on his objections, he could then pursue his due process claim in the court of appeals. 15 U.S.C. § 78y(a); *e.g.*, *Kabani & Co. v. SEC*, 733 F. App'x 918, 918-19 (9th Cir. 2018) (reviewing due process

17

challenge to Board disciplinary procedures). That review is sufficient. *See Elgin*, 567 U.S. at 17 (constitutional claim may be "meaningfully addressed in the Court of Appeals" (citation omitted)); *Thunder Basin*, 510 U.S. at 215.

Second, Doe's due process claim is not "wholly collateral to [the] statute's review provisions." *Free Enter. Fund*, 561 U.S. at 489 (citation omitted). Doe challenges the discovery rules, evidentiary standards, and other procedures the Board has applied or may apply in the pending disciplinary proceeding against him. Compl. ¶¶ 49-52. Far from being "collateral," those objections are thoroughly intertwined with the ongoing proceedings and are precisely the sorts of procedural objections Congress would expect parties to raise through the statutory review process. *See Bank of Louisiana*, 919 F.3d at 928 (claims not wholly collateral where they "arise directly from alleged irregularities in the agency enforcement proceedings").

Third, Doe's due process claim is not "outside the agency's expertise." *Free Enter. Fund*, 561 U.S. at 489 (citation omitted). The SEC reviewed and approved all the Board procedural rules that Doe now challenges. 15 U.S.C. §§ 7215(a), 7217(b). The SEC also regularly considers similar procedural objections to Board and SRO disciplinary proceedings. *Id.* §§ 78s(d)-(e), 7217(c)(2). The SEC is thus uniquely well positioned to assess the scope, impact, and rationale of the Board's procedures. *See Bank of Louisiana*, 919 F.3d at 929-30 (agency had expertise where claims challenged "how the hearing was conducted").

Courts have held that similar due process claims must be pursued through statutory review schemes. In *Bank of Louisiana*, for example, the respondent in an FDIC proceeding claimed that "the ALJ violated due process by preventing it from proffering certain evidence and by preventing [its founder] from talking with his counsel at certain points during the proceedings." 919 F.3d at 921. Applying *Thunder Basin*, the Fifth Circuit held that those due process claims were "of the

type Congress intended to be reviewed within th[e] statutory structure." *Id.* at 925-30 (citations omitted).[6]

In *Cochran*, the plaintiff originally pursued a due process claim, but the panel unanimously rejected jurisdiction over that claim (despite dividing over the separation of powers claim), and the plaintiff then abandoned that claim at the en banc stage. 20 F.4th at 199 & n.4. In *Axon Enterprise, Inc. v. FTC*, 986 F.3d 1173 (9th Cir. 2021), *cert. granted in part*, 142 S. Ct. 895 (2022), which is *Cochran*'s companion case at the Supreme Court, even the circuit judge who would have allowed the separation of powers claim agreed that a due process challenge to the administrative proceeding was subject to the statutory channeling procedure. *See id.* at 1196-97 (Bumatay, J., concurring in part). Thus, even when judges disagree about channeling structural constitutional claims, they broadly agree about due process claims like Doe's. Count V should therefore be dismissed.

## V.     The Court Should Dismiss All Of Doe's Claims On Non-Jurisdictional Grounds

Doe's claims cannot proceed in this Court for reasons beyond lack of jurisdiction. The barriers that *Free Enterprise Fund* and *Cochran* addressed concerned subject-matter jurisdiction. 561 U.S. at 489-91; 20 F.4th at 199-212. As *Cochran* explained, however, "even if Congress did not divest jurisdiction, other doctrines, such as standing, ripeness, exhaustion, . . . and abstention, may prevent district courts from hearing challenges to ongoing administrative enforcement proceedings." 20 F.4th at 211. Multiple non-jurisdictional grounds require dismissal here.

### A.     Doe Failed To Exhaust Administrative Remedies

Sarbanes-Oxley authorizes the SEC to review Board disciplinary proceedings under the

---

[6] In *Cochran*, the en banc Fifth Circuit described *Bank of Louisiana*'s *Thunder Basin* analysis as merely "reinforc[ing]" the express statutory text in that case. 20 F.4th at 204. But *Cochran* did not overrule *Bank of Louisiana*'s conclusion that the plaintiff's due process claim was the type of claim that was subject to the statutory review scheme.

Sarbanes-Oxley authorizes the SEC to review Board disciplinary proceedings under the

same provisions that govern SRO proceedings.  15 U.S.C. § 7217(c)(2).  In the SRO context, courts have long held that a party must exhaust those administrative remedies before seeking relief in court.  *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. NASD*, 616 F.2d 1363, 1370-71 (5th Cir. 1980) (dismissing suit against SRO "for failure to exhaust administrative remedies"); *Mohlman v. FINRA*, 977 F.3d 556, 558-61 (6th Cir. 2020); *Citadel Sec., LLC v. CBOE*, 808 F.3d 694, 699-700 (7th Cir. 2015); *Swirsky v. NASD*, 124 F.3d 59, 62-64 (1st Cir. 1997); *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 695-96 (3d Cir. 1979).  Those exhaustion principles apply here:  Sarbanes-Oxley's review scheme incorporates the very same review procedures that apply to SRO proceedings.  15 U.S.C. § 7217(c)(2).

Of course, the Supreme Court recognizes a "futility" exception to exhaustion where an agency is powerless to grant relief on a constitutional claim.  *Carr v. Saul*, 141 S. Ct. 1352, 1361 (2021).  But SEC review would not be futile here.  The SEC has broad authority to set aside Board sanctions that are "not appropriate," including on constitutional grounds.  15 U.S.C. § 7217(c)(3).  The SEC has exercised its powers to address other structural constitutional claims.  *See, e.g.*, *In re Pending Administrative Proceedings*, Exchange Act Release No. 82178, 2017 WL 5969234 (Nov. 30, 2017) (ratifying ALJ appointments); *cf. Notice of Filing of and Immediate Effectiveness of Proposed Bylaw and Rule Amendments to Provide that the Board's Appointment and Removal of Hearing Officers Are Subject to Commission Approval*, Exchange Act Release No. 85090, 2019 WL 626072 (Feb. 11, 2019) (requiring SEC approval for Board hearing officer appointments and removals).  Sarbanes-Oxley makes any violation of Board rules a violation of the Exchange Act, so the SEC can enforce Board rules on its own, either administratively or in district court.  15 U.S.C. § 7202(b)(1); *id.* §§ 78u(d), 78u-2, 78u-3.  The SEC could thus vacate any Board sanction and pursue charges against Doe in his own preferred forum, obviating all his claims.

B.        Doe Lacks A Cause Of Action

Congress's statutory review scheme also prevents Doe from asserting a valid cause of action in this Court. "To raise a claim in federal court, plaintiffs must demonstrate both that a federal court will have jurisdiction over their claim, and also that they . . . have a right of action to initiate that claim." *Harris Cnty. v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015). Doe fails to allege any cause of action and instead asserts only generic claims for injunctive and declaratory relief. Compl. at 30. A plaintiff may sometimes invoke an implied right of action for equitable relief on a constitutional claim. *See Free Enter. Fund*, 561 U.S. at 491 n.2 (citing *Ex parte Young*, 209 U.S. 123 (1908)). But, for reasons the Court did not address in *Free Enterprise Fund*, Doe cannot invoke such a cause of action here.

First, "[w]here Congress has created a remedial scheme for the enforcement of a particular federal right," courts "refuse[] to supplement that scheme with one created by the judiciary." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 74 (1996); *see also Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 328 (2015); *cf. Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 499-502 (5th Cir. 2020) (Oldham, J., concurring). Congress enacted a detailed scheme for review of Board disciplinary proceedings. 15 U.S.C. § 7517(c)(1)-(3); *id.* § 78y(a). Doe cannot evade that scheme by invoking implied equitable remedies instead.

Second, Congress's remedial scheme prevents Doe from satisfying the ordinary requirements for injunctive relief. A party seeking a permanent injunction must establish "immediate harmful consequences *irreparable in any other manner*." *Posada v. Lamb Cnty.*, 716 F.2d 1066, 1070 (5th Cir. 1983) (emphasis added). Congress's review scheme precludes any such showing here. Doe can seek relief at the SEC or the court of appeals.

Nor can Doe avoid the cause of action requirement by seeking declaratory relief. For one thing, "the Declaratory Judgment Act is procedural and does not create an independent private

21

right of action." *MERSCORP*, 791 F.3d at 552-53.  A demand for declaratory relief thus cannot supply a cause of action that Congress's express remedial scheme otherwise precludes.

For another thing, declaratory relief is discretionary, and courts must balance many factors before awarding it.  *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994).  Those factors include "whether there is a pending [alternative] action in which all of the matters in controversy may be fully litigated," "whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant," and "whether the plaintiff engaged in forum shopping in bringing the suit."  *Id.* (citation omitted).  Courts have repeatedly applied those factors to prevent plaintiffs from suing agencies for declaratory relief when confronted with pending or imminent agency proceedings.  *See, e.g.*, *Total Gas & Power N. Am., Inc. v. FERC*, 2016 WL 3855865, at *22-25 (S.D. Tex. July 15, 2016) (dismissing declaratory action filed shortly after FERC staff announced intent to recommend enforcement proceedings), *aff'd on other grounds*, 859 F.3d 325 (5th Cir. 2017); *Pom Wonderful LLC v. FTC*, 894 F. Supp. 2d 40, 44-45 (D.D.C. 2012); *Swish Mktg., Inc. v. FTC*, 669 F. Supp. 2d 72, 76-80 (D.D.C. 2009).  A plaintiff who files a declaratory action in those circumstances is engaging in "forum shopping" because "[t]he essence of [the] claims is that a district court forum would be more favorable than the agency process."  *Total Gas*, 2016 WL 3855865, at *24.  That same reasoning applies squarely here.

## CONCLUSION

The motion to dismiss under Rule 12(b) should be granted or, in the alternative, the case should be transferred to the U.S. District Court for the District of Columbia.

Dated:  April 14, 2023

Respectfully submitted,

*/s/ Donald B. Verrilli, Jr.*

| | |
|---|---|
| Jeffrey A. Lamken (pro hac vice) | Donald B. Verrilli, Jr. (pro hac vice) |
| Robert K. Kry (pro hac vice) | Elaine J. Goldenberg (pro hac vice) |
| Robert Y. Chen (pro hac vice) | Ginger D. Anders (pro hac vice) |
| **MOLOLAMKEN LLP** | Dahlia Mignouna (pro hac vice) |
| 600 New Hampshire Ave., NW, Suite 500 | Elissa A. Walter (pro hac vice) |
| Washington, DC 20037 | J. Kain Day (pro hac vice) |
| Telephone: (202) 556-2000 | **MUNGER, TOLLES & OLSON LLP** |
| jlamken@mololamken.com | 601 Massachusetts Ave., NW, Suite 500E |

Jeffrey A. Lamken (pro hac vice)
Robert K. Kry (pro hac vice)
Robert Y. Chen (pro hac vice)
**MOLOLAMKEN LLP**
600 New Hampshire Ave., NW, Suite 500
Washington, DC 20037
Telephone: (202) 556-2000
jlamken@mololamken.com

Marc A. Fuller
Texas State Bar No. 24032210
Erica Benites Giese
Texas State Bar No. 24036212
Hannah E. Walsh
Texas State Bar No. 24125717
**JACKSON WALKER LLP**
2323 Ross Ave., Suite 600
Dallas, TX 75201
Telephone: (214) 953-6000
Facsimile: (214) 953-5822
mfuller@jw.com

Donald B. Verrilli, Jr. (pro hac vice)
Elaine J. Goldenberg (pro hac vice)
Ginger D. Anders (pro hac vice)
Dahlia Mignouna (pro hac vice)
Elissa A. Walter (pro hac vice)
J. Kain Day (pro hac vice)
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Ave., NW, Suite 500E
Washington, DC 20001
Telephone: (202) 220-1100
donald.verrilli@mto.com

Virginia Grace Davis
Texas State Bar No. 24101681
**MUNGER, TOLLES & OLSON, LLP**
560 Mission Street, 27th Floor
San Francisco, CA 94105
Telephone: (415) 512-4000
grace.davisfisher@mto.com

*Counsel for Defendant Public Company Accounting Oversight Board*

## CERTIFICATE OF SERVICE

I certify that on April 14, 2023, a true and correct copy of the foregoing document was served on all counsel of record through the Court's ECF system.

*/s/ Donald B. Verrilli, Jr.*
Donald B. Verrilli, Jr.