# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| JOHN DOE § | |
| § | |
| v. § | CIVIL ACTION NO. 3:23-CV-0149-S |
| § | |
| PUBLIC COMPANY ACCOUNTING § | |
| OVERSIGHT BOARD § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant Public Company Accounting Oversight Board's Rule 12(b) Motion to Dismiss Plaintiff's Complaint ("Motion") [ECF No. 43]. The Court has reviewed the Motion, Defendant's Memorandum of Law in Support of the Motion ("Defendant's Brief") [ECF No. 44], Plaintiff John Doe's Memorandum of Law in Opposition to the Motion ("Response") [ECF No. 57], Defendant's Reply in Support of the Motion ("Reply") [ECF No. 58], the arguments of counsel at the January 24, 2024, hearing on the Motion, and the applicable law. For the following reasons, the Court **GRANTS** the Motion to the extent that the Court transfers this case to the United States District Court for the District of Columbia.

### I. BACKGROUND

In this lawsuit, Plaintiff John Doe challenges the actions and authority of Defendant Public Company Accounting Oversight Board. Defendant is a private, nonprofit, non-governmental corporation that was created by the Sarbanes-Oxley Act of 2002. Compl. For Injunctive & Declaratory Relief ("Complaint") [ECF No. 1] ¶¶ 4, 8. Defendant "oversee[s] the audit of companies that are subject to the securities laws[] and related matters." 15 U.S.C. § 7211(a). Every domestic and foreign accounting firm that audits public companies under the securities laws must register with Defendant, pay an annual fee, and comply with Defendant's rules and oversight. Compl. ¶ 10 (citation omitted). Defendant is incorporated under the laws of Washington, D.C.,

and has its headquarters in Washington, D.C. *Id.* ¶¶ 4, 8. Defendant is registered to conduct business in Texas and has offices and employees in Irving and Houston, Texas. *Id.* ¶ 4.

Plaintiff is an accountant and previously worked as an auditor at an accounting firm in Colombia, South America. *Id.* ¶ 3. That firm is part of an international network of accounting firms ("Network"). *Id.* The Network's United States-based member firm "is registered to conduct business in Texas, and it maintains an office and employees in Texas." *Id.* ¶ 6. In 2015, Plaintiff worked on a team that performed component audit procedures relating to a company ("Company") to assist a different member firm within the Network.[1] *Id.* ¶ 3. The Company is "headquartered outside the United States," but its "base of operations in the United States is in Texas." *Id.* ¶ 7.

According to Plaintiff, Defendant began an inspection and investigation of a component audit related to the Company's fiscal year 2015 financial statements. *Id.* ¶ 54. No later than 2019, Defendant started investigating Plaintiff. *Id.* In February 2022, Defendant's prosecutors informed Plaintiff, through counsel, that they would initiate disciplinary proceedings against him alleging that he failed to cooperate with the inspection and investigation. *Id.* Defendant's prosecutors told Plaintiff that, to settle the anticipated charges against him, he would have to agree to a lifetime bar on being associated in any capacity with a registered public accounting firm, pay a $150,000 penalty, and admit to the alleged conduct. *Id.* ¶¶ 55-56. Plaintiff did not agree to the terms, and Defendant instituted formal disciplinary proceedings in December 2022. *Id.* ¶¶ 56-57.

Defendant's disciplinary process entails several steps. First, the investigatory target is formally charged and either settles, defaults, or fights the charges. *Id.* ¶ 22. Then, the individual goes through a disciplinary proceeding that includes an evidentiary hearing on the merits before

---

[1] According to Defendant, a component auditor audits "one subsidiary or component" of a company. Def.'s Br. 3 (quoting *In re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d 495, 498 (D.N.J. 2021)).

one of Defendant's hearing officers. *Id.* After that, the individual can appeal any adverse decision to Defendant and to the United States Securities and Exchange Commission ("SEC"). *Id.*

In light of the disciplinary proceedings involving Plaintiff, which are still pending,[2] Def.'s Br. 4, Plaintiff brought suit seeking declaratory and injunctive relief. Compl. 1. Plaintiff argues that "as a result of . . . constitutional violations . . ., Plaintiff is being deprived of the fundamental right to have his fate determined by a neutral, lawfully structured decisionmaker after a full and fair trial on the merits." *Id.* ¶ 58. Specifically, Plaintiff challenges Defendant's taxing and funding scheme and the use of that scheme to fund its disciplinary proceedings against Plaintiff under Article I of the Constitution. *Id.* ¶¶ 59-64. Under Article II of the Constitution, Plaintiff challenges: (1) Defendant's allegedly unsupervised exercise of executive power in investigating, prosecuting, and, in the future, punishing Plaintiff and (2) the multiple layers of protection from removal by the President of the United States enjoyed by Defendant's hearing officers. *Id.* ¶¶ 65-68, 75-78. Next, Plaintiff claims that Defendant's appointment of hearing officers violates the Appointments Clause of the Constitution. *Id.* ¶¶ 69-74. Plaintiff also brings a Fifth Amendment due process challenge to Defendant's allegedly "systematically biased, secretive, and" procedurally unfair disciplinary proceedings. *Id.* ¶¶ 79-82. Finally, Plaintiff contends that Defendant's disciplinary process violates his Seventh Amendment right to trial by jury. *Id.* ¶¶ 83-85.

Defendant moved to dismiss, arguing that the Court lacks personal jurisdiction, that venue is improper, that the Court lacks subject-matter jurisdiction over Plaintiff's non-structural due process claims, and that certain non-jurisdictional grounds also require dismissal. Because the

---

[2] At the January 24, 2024, hearing on the Motion, the parties indicated that the evidentiary hearing in the proceedings against Plaintiff has been stayed. And "the location of the disciplinary hearing has not yet been set." Resp. 5.

3

Court determines that it does not have personal jurisdiction over Defendant and that the case must be transferred, the Court does not reach Defendant's remaining arguments in support of dismissal.

## II. LEGAL STANDARDS

### *A. Personal Jurisdiction*

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss claims for lack of personal jurisdiction. The plaintiff bears the burden of making a prima facie showing that a court has personal jurisdiction over a defendant. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (citation omitted). In considering a motion to dismiss pursuant to Rule 12(b)(2), the court must accept the plaintiff's "uncontroverted allegations, and resolve in its favor all conflicts." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000) (citation omitted).

### *B. Venue*

Federal Rule of Civil Procedure 12(b)(3) allows a defendant to move to dismiss based on improper venue. On such a motion, "the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007) (citation omitted). If venue is improper, 28 U.S.C. § 1406(a) instructs the court to "dismiss, or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought." The decision to dismiss or transfer is discretionary. *Graham v. Dyncorp Int'l, Inc.*, 973 F. Supp. 2d 698, 701 (S.D. Tex. 2013) (citation omitted).

Unlike Section 1406(a), 28 U.S.C.§ 1404(a) allows a court to transfer venue to any other district or division where the suit might have been brought, even if venue is proper in the transferor court. "A party seeking a transfer under Section 1404(a) must show good cause by clearly

demonstrating that a transfer is for the convenience of parties and witnesses, in the interest of justice." *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022) (cleaned up). District courts enjoy "broad discretion in deciding whether to order a transfer." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) (quoting *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998)).

### III. ANALYSIS

Defendant asks the Court to either dismiss Plaintiff's lawsuit or, in the alternative, transfer this case for lack of personal jurisdiction and/or for improper or inconvenient venue. Def.'s Br. 10. Plaintiff responds that the Court has personal jurisdiction either under a traditional minimum contacts analysis or because the Exchange Act provides for nationwide service of process. Resp. 1. Plaintiff contends that venue is proper and that the Court should deny a discretionary venue transfer. *Id.* Because the Court lacks personal jurisdiction and, alternatively, concludes that transfer would serve the convenience of parties and witnesses and the interests of justice, the Court determines that this case must be transferred to the District of Columbia.

#### *A. Personal Jurisdiction*

##### *i. Minimum Contacts*

Personal jurisdiction exists "if the state's long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with due process." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018) (citation omitted). Texas's long-arm statute extends to the limits of federal due process, so the Court has personal jurisdiction over a nonresident defendant so long as the assertion of jurisdiction comports with the Due Process Clause of the United States Constitution. *See id.* ("[T]he two-step inquiry collapses into one federal due process analysis." (citation omitted)). Personal jurisdiction can be general or specific. *See Lewis v. Fresne*,

5

252 F.3d 352, 358 (5th Cir. 2001). Plaintiff does not contend that Defendant is subject to general jurisdiction in this Court, *see* Resp. 3, so the Court will address only specific jurisdiction.

For a court to exercise specific jurisdiction, the lawsuit must arise out of or relate to the defendant's contacts with the forum. *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). "In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State . . . ." *Inmar Rx Sols., Inc. v. Devos, Ltd.*, 786 F. App'x 445, 448 (5th Cir. 2019) (citation omitted). That activity or occurrence must "create a substantial connection with the forum State"; without such a connection, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* (citations omitted). In evaluating specific jurisdiction, courts in the Fifth Circuit consider: (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (citation omitted).

At the first step, Plaintiff contends that Defendant purposefully availed itself of the privilege of conducting activities in Texas because it is registered to conduct business in the state and has two offices and an unknown number of employees in Texas. Resp. 4.

Moving to the second prong of the analysis, Plaintiff states—and the Court agrees—that his causes of action "arise from [Defendant's] inspection of Plaintiff's work on a component audit for [the Company]." Resp. 4-5. And as Defendant argues, Plaintiff's claims also arise out of Defendant's ensuing prosecution of Plaintiff. Def.'s Br. 10; *see also* Compl. 1 ("Plaintiff . . .

6

seeks . . . relief to stop [Defendant] from continuing its unlawful and unconstitutional prosecution of him in secret disciplinary proceedings[.]"). However, Plaintiff never attempts to connect these claims to Defendant's forum-related contacts. As stated above, Plaintiff argues that Defendant's forum-related contacts are being registered to do business in Texas and maintaining two offices and employees there. Plaintiff does not allege that Defendant's Texas offices or employees were involved in the inspection, investigation, or disciplinary proceeding in any way and does not explain how Defendant registering to do business in Texas relates to his claims.

Instead, Plaintiff ignores the contacts that he identified at the first step and contends that: (1) the Company's United States operations are based in Texas; and (2) "Texas is one of the U.S. states geographically closest to where the inspection took place (Colombia)." Resp. 4-5. The former argument is unpersuasive. Plaintiff does not focus on "contacts that the 'defendant [*itself*]' creates with the forum State"; instead, he improperly focuses on contacts between a third party— the Company—and Texas. *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citation omitted). And Plaintiff does not explain how the presence of one of the Company's bases of operations in Texas links either Plaintiff's claims or Defendant to the state. Plaintiff does not allege, for example, that he performed the challenged audit in Texas, that he audited the Company's Texas-based operations, that Defendant's investigation of Plaintiff or initiation of disciplinary proceedings against Plaintiff was connected to Texas, or that Defendant otherwise violated Plaintiff's constitutional rights in Texas.[3] In other words, Plaintiff identifies no "activity or occurrence

---

[3] In his Response, Plaintiff claims for the first time that Defendant conducted an inspection of Plaintiff's firm's audit of the Company's "Texas operation" and that such inspection led to the investigation. Resp. 2. The Court will not consider unsupported factual allegations in the Response that are not included in the Complaint. *Obinyan v. Prime Therapeutics LLC*, No. 3:18-CV-0933-D, 2019 WL 5647955, at *3 (N.D. Tex. Oct. 31, 2019) (citation omitted). And regardless, this allegation does not show that Defendant conducted its inspection or investigation in Texas and does not connect Defendant's known contacts with Texas to Plaintiff's claims. *See, e.g., Platt v. Carteret Cnty. Dep't of Hum. Servs.*, No. 4:21-CV-1241-O,

involving [Defendant] that takes place in" Texas. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021) (cleaned up).

The latter argument is even less compelling. Plaintiff points to no precedent stating that personal jurisdiction will lie in a state "geographically close[] to" the location where the underlying events occurred, Resp. 5, and the Court has found none. Therefore, Plaintiff's causes of action do not arise out of or result from Defendant's contacts with Texas, and the Court need not consider the third prong of the analysis. *See Carmona*, 924 F.3d at 193 (citation omitted). The Court does not have specific personal jurisdiction over Defendant.

*ii. Nationwide Service of Process*

Plaintiff argues that even if Defendant is not subject to specific jurisdiction in Texas, the Exchange Act provides for nationwide service of process, and Defendant has minimum contacts with the United States. Resp. 5. "With nationwide service, the forum is the United States," so "minimum contacts with the United States (Fifth Amendment due process) suffice; minimum contacts with a particular state (Fourteenth Amendment due process) are beside the point." *Double Eagle Energy Servs., L.L.C. v. MarkWest Utica EMG, L.L.C.*, 936 F.3d 260, 264 (5th Cir. 2019) (citation omitted). Plaintiff does not bring claims under the Exchange Act but nevertheless relies on the statute's nationwide service of process provision to make his argument. Plaintiff's argument proceeds as follows: (1) Defendant was created by the Sarbanes-Oxley Act, *see* 15 U.S.C. § 7211(a); (2) the Sarbanes-Oxley Act provides that Defendant's power to be sued is subject to 15 U.S.C. § 7217, *see id.* § 7211(f)(1); (3) Section 7217 incorporates the relevant provisions of the Exchange Act in describing the SEC's oversight authority over Defendant; (4) the Exchange Act

---

2022 WL 3907712, at *6 (N.D. Tex. Aug. 15, 2022) (finding no personal jurisdiction where a North Carolina agency investigated child abuse that allegedly occurred in Texas), *report and recommendation adopted by* 2022 WL 3928393 (N.D. Tex. Aug. 30, 2022).

8

provides for nationwide service of process; and (5) therefore, "the same nationwide service of process provisions that apply in all other actions under the federal securities laws also apply in actions involving [Defendant]." Resp. 6-7.

Applying Plaintiff's logic would require the Court to rule, in an apparent matter of first impression, that Defendant is subject to personal jurisdiction throughout the country no matter what the subject matter of a given lawsuit is, merely because of the statute by which Defendant was created. The Court finds no legal basis for doing so. Instead, the Court finds that binding precedent dictates the opposite result. *See, e.g., Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 825 (5th Cir. 1996) ("[W]hen a federal court attempts 'to exercise personal jurisdiction over a defendant ***in a suit based upon a federal statute providing for nationwide service of process***, the relevant inquiry is whether the defendant has had minimum contacts with the United States.'" (emphasis added) (quoting *Busch v. Buchman, Buchman & O'Brien, L. Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994))). Plaintiff brought the instant suit under the Constitution, not under any federal statute or rule providing for nationwide service of process. This fact distinguishes this case from those cited by Plaintiff. *See Double Eagle Energy Servs.*, 936 F.3d at 264 (summons in suit related to bankruptcy could have been served pursuant to Bankruptcy Rule 7004, which provides for nationwide service of process); *Bellaire Gen. Hosp.*, 97 F.3d at 825 (suit brought under ERISA, which contains a nationwide service of process provision); *Busch*, 11 F.3d at 1256-57 (suit brought under Exchange Act, which provides for nationwide service of process).

"[A]bsent a controlling federal statute regarding service of process, the Court must determine whether the forum state's long-arm statute confers personal jurisdiction over the defendant." *Booe v. Alecto Healthcare Servs.*, No. 4:22-CV-110, 2023 WL 4303591, at *3 (E.D.

9

Tex. June 30, 2023) (citing *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020)). As the Court already concluded, Texas's long arm-statute does not confer personal jurisdiction over Defendant. Because Plaintiff did not bring suit under a statute that "provides for more expansive personal jurisdiction," this conclusion ends the analysis. *Barlow v. Ward*, No. 23-CV-130, 2023 WL 5822752, at *1 (W.D. La. Aug. 30, 2023).

The Court's ruling is bolstered by the language of the Exchange Act's nationwide service of process provision, which provides that process in any suit "to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations . . . may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found." 15 U.S.C. § 78aa(a). Plaintiff's action, which seeks declaratory and injunctive relief to remedy alleged constitutional violations, is not a "suit or action to enforce any liability or duty created by [the Exchange Act] or rules and regulations thereunder," nor does it seek "to enjoin any violation of [the Exchange Act] or rules and regulations [thereunder]." *Id.* Therefore, nationwide service of process under the Exchange Act is unavailable to Plaintiff, and the relevant forum is Texas, not the United States. As previously determined, Defendant is not subject to personal jurisdiction in Texas.

Lacking personal jurisdiction over Defendant, the Court is faced with the choice to dismiss or transfer this case. *See TransFirst Grp., Inc. v. Magliarditi*, 237 F. Supp. 3d 444, 456 (N.D. Tex. 2017) ("Once a district court determines it lacks personal jurisdiction over a defendant, it has the option of dismissing the action or transferring it to any district in which it could have been brought." (citing 28 U.S.C. § 1631)). "The decision to transfer is discretionary, and often made to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Springboards to Educ., Inc. v. Hamilton Cnty. Read 20,*

No. 3:16-CV-2509-B, 2017 WL 3023489, at *6 (N.D. Tex. July 14, 2017) (citation and internal quotation marks omitted). As discussed in more detail below, the Court concludes that transfer to the United States District Court for the District of Columbia, rather than dismissal, is warranted.

### *B. Venue*

"[T]ransfer to a district in which personal jurisdiction over the defendant can be obtained may properly be made under either [S]ection 1404(a) or [S]ection 1406(a)." *Ellis v. Great Sw. Corp.*, 646 F.2d 1099, 1107 (5th Cir. Unit A June 1981) (citation omitted). Transfer to the United States District Court for the District of Columbia is appropriate under both sections.

#### *i. Section 1406(a)*

In determining whether to transfer a case under Section 1406(a), the threshold question is whether the district to which transfer is sought is a district in which the case could have been filed. *Druid Grp., Inc. v. Dorfman*, No. 3:05-CV-00762-M, 2006 WL 2460553, at *4 (N.D. Tex. Aug. 22, 2006). Under 28 U.S.C. § 1391(b), a civil action may be brought in a judicial district in which any defendant resides, a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or, in the absence of a proper district under the first two options, any judicial district in which any defendant is subject to the court's personal jurisdiction. As Defendant notes, "the Complaint affirmatively recognizes that [Defendant] is a District of Columbia nonprofit corporation that is 'headquartered in the District of Columbia.'" Def.'s Br. 7 (quoting Compl. ¶¶ 4, 8). Therefore, Defendant resides in the District of Columbia, and this case could have been filed there. *See* 28 U.S.C. § 1391(b)(1), (c)(2); *Daimler AG*, 571 U.S. at 137 ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" (alterations in original) (citation omitted)).

11

Having resolved the threshold question in the affirmative, the Court next considers whether venue is proper in the Northern District of Texas. In the Complaint, Plaintiff premises venue on 28 U.S.C. § 1391(b)(1), which permits the filing of a civil action in a judicial district in which any defendant resides. Compl. ¶ 2. An entity resides in any district in which it is subject to the court's personal jurisdiction with respect to the case in question. *Graham*, 973 F. Supp. 2d at 701 (citing 28 U.S.C. § 1391(c)(2)). But for the reasons stated above, Defendant is not subject to this Court's personal jurisdiction with respect to this case. And neither of the remaining provisions of Section 1391 apply. Plaintiff does not allege that a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in Texas, as required under Section 1391(b)(2). Further, because there is a district in which this action may otherwise be brought—the United States District Court for the District of Columbia—Section 1391(b)(3) also does not apply. Thus, venue is improper in this district, and the Court determines that transfer to the District of Columbia is in the interest of justice.

*ii. Section 1404(a)*

Even if the Court had personal jurisdiction over Defendant and therefore found that venue was proper in the Northern District of Texas, the Court would transfer this case to the United States District Court for the District of Columbia for the convenience of the parties and witnesses and the interest of justice. Courts analyzing a discretionary venue transfer consider private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (citation omitted). The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure witnesses' attendance; (3) the cost of attendance for witnesses; and (4) all other practical problems. *Id.* (citation omitted). As to the first three factors, although this case largely turns on legal questions, Defendant has shown that, to the extent evidence or

witnesses will be necessary, the District of Columbia is a more convenient location. Neither party has identified a witness or any evidence located in the Northern District of Texas, though Plaintiff argues that the state of Texas is "geographically close to" Plaintiff and other unidentified witnesses. Resp. 5. By contrast, Defendant—the entity whose structure and procedures are at issue—"is headquartered in the District of Columbia, so any relevant witnesses or documents are likely to be located there, and compulsory process is available there but not in th[e] [Northern] District [of Texas]." Reply 6 (citing Def.'s Br. 13). Defendant does not identify any other practical problems; therefore, the fourth factor is neutral. The Court concludes that the private interest factors weigh in favor of transfer.

The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws. *In re Volkswagen AG*, 371 F.3d at 203 (citation omitted).

As to the first factor, Defendant argues that resolution of this case would be more expeditious in the District Court for the District of Columbia because the median time from filing to disposition in that district is 5.6 months, as opposed to 56 months in the Northern District of Texas. Def.'s Br. 13-14 (citation omitted). Defendant contends, and the Court agrees, that this number is a relevant indicator of congestion for this case, which is unlikely to require a trial. Reply 7. Moreover, during the twelve-month period ending December 31, 2023, the Northern District of Texas had 542 weighted filings per judgeship, whereas the District Court for the District of Columbia had 291. U.S. DIST. CTS. – NAT'L JUD. CASELOAD PROFILE, www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2023.pdf (last visited Mar. 13, 2024); *see also Radoszewski v. Plastics Indus. Ass'n*, No. 3:22-CV-1482-B, 2022 WL 17330464, at *6 (N.D.

13

Tex. Nov. 29, 2022) ("By quantifying case complexity, weighted filing statistics give a more complete picture of docket congestion than simple caseload statistics can provide."). And as the Fifth Circuit recently reiterated, "the district court is better placed to evaluate its docket efficiency." *In re Clarke*, No. 24-50079, 2024 WL 886953, at *3 (5th Cir. Mar. 1, 2024) (citation and internal quotation marks omitted). Having evaluated its own docket efficiency, the Court concludes that the District Court for the District of Columbia would be able to resolve this case in a more expeditious manner. *See id.* The first factor weighs in favor of transfer.

The second factor also weighs in favor of transfer. "Transfer is appropriate where none of the operative facts occurred in the [transferee district] and where the [transferee district] ha[s] no particular local interest in the outcome of the case." *La Day v. City of Lumberton*, No. 2:011-CV-237 (JRG), 2012 WL 928352, at *3 (E.D. Tex. Mar. 19, 2012) (citing *In re Volkswagen*, 545 F.3d at 318). Here, no operative facts occurred in the Northern District of Texas, and this district has no particular local interest in the outcome of the case. Therefore, the Court may look to the location of the incident, witnesses, evidence, and the parties. *Id.* Those locations are Colombia and Washington, D.C.[4] *See, e.g., Morgan-Rinehart v. Van de Perre*, No. A-16-CA-01327-SS, 2017 WL 1383933, at *11 (W.D. Tex. Apr. 12, 2017) (finding that Montana courts had local interest where a corporate defendant was organized under the laws of Montana and had its principal place of business in the state). The third factor is neutral because the issues in this case involve federal law. *Odom v. Microsoft Corp.*, 596 F. Supp. 2d 995, 1004 (E.D. Tex. 2009) (citing, among other sources, *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004)). And the

---

[4] The Court notes only Defendant's location because Plaintiff, who is proceeding pseudonymously, has not yet disclosed his residence or domicile. Plaintiff states only that Texas is "the state geographically closest to Plaintiff." Resp. 9.

14

fourth factor is also neutral, as there are no potential conflict of laws issues. The Court concludes that the public interest factors weigh in favor of transfer.

Because the private and public interest factors weigh in favor of transfer to the United States District Court for the District of Columbia, the Court would transfer this case under Section 1404(a) even if venue was proper in this district.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Rule 12(b) Motion to Dismiss Plaintiff's Complaint [ECF No. 43] only to the extent that the Court **GRANTS** Defendant's alternative request to transfer this case. *See* Def.'s Br. 2. It is **ORDERED** that this case is **TRANSFERED** to the United States District Court for the District of Columbia. Because the Court exercises its discretion to transfer the case, the Court does not reach the remaining arguments in the Motion.

**SO ORDERED.**

SIGNED March 13, 2024.

_____
**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**